UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL DAILY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:10-CV-00201 |
| | § | |
| DALLAS COUNTY COMMUNITY | § | |
| COLLEGE DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Michael Daily, Plaintiff in the above-styled and numbered cause ("Plaintiff"), and files this, his First Amended Complaint against the Dallas County Community College District ("DCCCD" and/or "Defendant"), and in support thereof would respectfully show the Court the following:

**I.**
**THE PARTIES**

1.1     Plaintiff is an individual residing in Dallas County, Texas.

1.2     Defendant is a community college district organized and existing pursuant to the laws of the State of Texas for the purpose of operating a system of community colleges in and around Dallas County, Texas.  The address of Defendant's administrative offices is 1601 South Lamar Street, Dallas, Dallas County, Texas  75215.  Defendant may be served with process by serving its Chancellor, Dr. Wright Lassiter, at the foregoing address; however, upon the filing of Plaintiff's Original Complaint on February 1, 2010, Plaintiff requested a Waiver of Service of Summons from Defendant on the same date, in lieu of formal service, by forwarding the Waiver,

along with a copy of Plaintiff's Original Complaint, to Defendant by and through its Chancellor, Dr. Wright Lassiter, and its general counsel, Robert Young.  Upon the filing of this Complaint, Plaintiff will forward a copy of same to Defendant by and through its Chancellor, Dr. Wright Lassiter, and its general counsel, Robert Young, and the time for Defendant to respond to this Complaint is governed by Rule 15(a)(3) of the Federal Rules of Civil Procedure.  Defendant is being sued in its name and own right as the employer of Plaintiff under Title VII of the Civil Rights Act of 1964, under Chapter 21 of the Texas Labor Code, for federal and state constitutional and/or statutory violations, for breach of contract, and under the Federal Declaratory Judgment Act.

## II.
## JURISDICTION AND VENUE

2.1.    This Court has jurisdiction over this matter pursuant to the United States Constitution, particularly the First, Fifth, and Fourteenth Amendments, and under federal statutory law, particularly Title VII of the Civil Rights Act of 1964 ("Title VII"),[1] 42 U.S.C. §§ 1981, 1981a, 1983, 1985, and 1988, and the Federal Declaratory Judgment Act.[2]

2.2    This Court is vested with original and supplemental jurisdiction over these claims by operation of 28 U.S.C. §§ 1331, 1343, and 1367.

2.3    This Court has in personam jurisdiction over Defendant because it is a community college district organized and existing pursuant to the laws of the State of Texas, located in the State of Texas.

2.4    This Court has pendent jurisdiction over the state law claims asserted by Plaintiff herein, including the breach of contract claim and those claims asserted under the Texas Constitution, Chapter 21 of the Texas Labor Code, Chapter 106 of the Texas Civil Practice and

---

[1] 42 U.S.C. §§ 2000e *et seq.*

[2] 28 U.S.C. § 2201.

Remedies Code, Chapter 271 of the Texas Local Government Code, and Texas common law and/or statute.

2.5     Venue lies in this judicial district pursuant to 28 U.S.C. § 1391 because it is the judicial district in which Defendant resides and in which a substantial part of the events or omissions giving rise to the claim occurred.

2.6     Additionally, an actual controversy exists between the parties hereto within the meaning of 28 U.S.C. § 2201, and this Court is, therefore, vested with the power in the instant case to declare and adjudicate the legality and/or constitutionality of the actions and/or conduct by Defendant against Plaintiff.

### III.
### FACTUAL BACKGROUND

3.1     Plaintiff is a current employee of Defendant, and he has been an employee of Defendant for approximately the past nine years.  Plaintiff spent the first year of his employment with Defendant serving as an Assistant Accountant at Defendant's Service Center, and since that time, Plaintiff has been employed by Defendant as a full-time instructor at Defendant's Cedar Valley College Campus ("CVC").  Also, beginning with the second year of his employment up until approximately the spring of 2009, Plaintiff was actively involved in Defendant's prison program as a normal part of his employment with Defendant.  At all relevant times, Defendant's prison program was and still is associated with and supervised by CVC.

3.2     Plaintiff spent the first four years of his involvement with Defendant's prison program by working at the federal prison located in or around Seagoville, Texas.  Thereafter, Plaintiff spent the next three years of his involvement with Defendant's prison program at the state prison located in or around Hutchins, Texas, which continued until approximately the spring of 2009 when such involvement ended at the direction and decision of certain individuals

employed by Defendant at CVC.  Throughout Plaintiff's employment with Defendant, he has received overall performance evaluations of "exceeds standards of performance."  In fact, as recently as February 24, 2009, Plaintiff received an "exceeds standards of performance" evaluation from his immediate supervisor, Dean Ruben Johnson ("Dean Johnson"), and his three year contract with Defendant was renewed on or about May 11, 2009.

      3.3    The incidents giving rise to Plaintiff's claim began in or around August 2008, and since that time, Plaintiff has been continuously subjected to race and/or color discrimination, as well as retaliation and adverse employment actions, by certain individuals employed by Defendant at CVC, which is still ongoing.  The specific individuals employed by Defendant that have been the main participants orchestrating and/or involved with the discrimination, retaliation, and adverse employment actions against Plaintiff include: (1) Dean Johnson, who is and has been Plaintiff's immediate supervisor at all relevant times; (2) Dr. Savannah Jones, who is the former Vice-President of Instruction at CVC ("Dr. Jones"); (3) Dr. Jennifer Wimbish, who is and has been the College President of CVC at all relevant times ("Dr. Wimbish"); and (4) Dr. Diane Minger, who is and has been the Program Coordinator at CVC at all relevant times ("Dr. Minger") (collectively referred to herein as the "CVC Administration").

      3.4    Pursuant to Defendant's policies, procedures, guidelines, rules, and/or regulations, full-time instructors, such as Plaintiff, are required to teach five classes as a part of their base load; however, because Plaintiff had been providing administrative leadership for Defendant's prison program, Plaintiff received 40% release time in exchange for his prison coordinator duties so that two classes that Plaintiff would have been normally required to teach were excused, without any reduction in pay.  Therefore, during the time that Plaintiff served as the prison coordinator of Defendant's prison program, he was only required to teach three classes as a part

of his base load, all of which were classes taught on the actual campus of CVC.  In addition to Plaintiff's regular course load of three classes, the historical and customary practice of Defendant was to provide Plaintiff with extra service classes, which typically consisted of three additional off-campus classes taught at the prison facilities.

3.5    In or around July 2008, Plaintiff was informed by the CVC Administration that he had the opportunity to teach full-time and cease providing administrative leadership (i.e., serving as the prison coordinator) to Defendant's prison program.   Previously, Plaintiff had asked Defendant for additional assistance with his duties as the prison coordinator for the state prison program because that program had grown tremendously since the time that Plaintiff became its prison coordinator.  At that time, Plaintiff was only receiving 40% release time (the equivalent of two classes), and because of the size of the state prison program, Plaintiff's role as prison coordinator required much more time than the equivalent of two classes.  Because Defendant had ignored Plaintiff's requests for additional assistance and/or more release time, Plaintiff advised the CVC Administration of his interest in teaching full-time if he could obtain additional campus classes at CVC.  If Plaintiff would no longer be providing administrative leadership for the prison program, Plaintiff needed to teach two additional classes to make up for the 40% release time that he was receiving because of his role as prison coordinator, or else, Plaintiff would suffer a substantial loss of income.  Therefore, in conjunction with attempting to teach full-time and obtaining the additional two classes, Plaintiff requested to teach at least one of the additional classes on the actual campus of CVC for the fall 2008 semester.  Plaintiff was qualified to teach the additional campus class requested, and furthermore, the additional campus class was the same course that Plaintiff had previously taught during his employment with Defendant.

3.6     Despite Plaintiff's reasonable request, Plaintiff was subsequently advised by Dean Johnson in or around August 2008 that he would not permit Plaintiff to obtain any additional campus classes at CVC.  Dean Johnson advised Plaintiff that Plaintiff would only be permitted to obtain additional off-campus classes taught at the prison facilities.  In response, Plaintiff advised Dean Johnson that this would violate Defendant's "Reduction Criteria" Policy because it would require Plaintiff to take classes away from more senior adjunct instructors at the prison facilities, rather than from less senior adjunct instructors teaching classes on CVC's campus.  Despite notice of the potential violation, Dean Johnson insisted that Plaintiff would only be permitted to obtain the two additional requisite classes by teaching off-campus classes at the prison facilities.

3.7     The foregoing conduct was racially motivated and/or constituted race and/or color discrimination against Plaintiff because Dean Johnson is African American, and subsequent to Plaintiff's request, Dean Johnson allowed Sheila Simon, an African American instructor ("Ms. Simon"), who held a similar faculty position to Plaintiff within Defendant's prison program, to obtain an additional campus class at CVC when she made a similar request.

3.8     Prior to Defendant removing Plaintiff as the prison coordinator for the state prison program, Ms. Simon and Plaintiff were similarly situated because they were the only full-time instructors within Defendant's prison program.  Further, Ms. Simon and Plaintiff were the only two prison coordinators.  However, Plaintiff had been a prison coordinator with Defendant's prison program for a longer tenure than Ms. Simon.  Plaintiff helped start Defendant's prison program by serving as the sole prison coordinator of the federal prison when it was the only prison within Defendant's prison program.  Subsequently, when the state prison became a part of Defendant's prison program, Plaintiff became the prison coordinator at the state prison because it

was larger and would require more experience, and Ms. Simon replaced Plaintiff as the prison coordinator at the federal prison.

3.9     Despite the foregoing, Dean Johnson elected to provide Ms. Simon with preferential treatment, based on race and/or color, by allowing her to obtain an additional campus class at CVC shortly after he denied Plaintiff's similar request in the fall of 2008.  The rules imposed against Plaintiff by Dean Johnson regarding Plaintiff's ability to obtain additional campus classes were unique to Plaintiff.  As set forth above, these rules were not and still are not being applied to Ms. Simon, who at all relevant times held a similar faculty position to Plaintiff.

3.10     Additionally, Dean Johnson instructed and/or collaborated with Dr. Minger, who is responsible for assigning courses to CVC's faculty and instructors, to exclude Plaintiff from any consideration for campus courses taught at CVC.  Dr. Minger, in previous semesters, found Plaintiff to be qualified to teach the campus courses sought by Plaintiff and has even invited Plaintiff to teach them, but of course, this ceased once Plaintiff filed grievances and an EEOC Charge opposing the racial and/or color discrimination, as well as the retaliation resulting from such opposition.  Once again, no such restriction was or has been imposed on Ms. Simon.

3.11     In or around September 2008, in an effort to resolve Plaintiff's then current situation, Plaintiff agreed to meet with Dr. Wimbish.  Subsequently, Dr. Wimbish suggested the use of an outside ombudsperson, Dr. Bettie Tully ("Dr. Tully"), to resolve the situation, and Plaintiff agreed to participate in an attempt to bring closure to the matter.  In the interim period prior to the meeting with Dr. Tully, Dean Johnson presented Plaintiff with an extra service contract, which Plaintiff historically and customarily received during his employment with Defendant; however, without Plaintiff's knowledge or consent, Dean Johnson had unilaterally modified the contract so that Plaintiff no longer taught three campus classes at CVC as a part of

his base teaching load.   Under the modified contract, one of Plaintiff's previous off-campus classes replaced one of his campus courses in his base teaching load.   Luckily, Plaintiff brought this unilateral change to Defendant's attention, and Plaintiff was able to have Dean Johnson's unilateral and retaliatory change reversed.

3.12    As a result of the meeting with Dr. Tully, Plaintiff and Defendant agreed that Plaintiff would be kept advised of any campus classes that became available for him to teach, and more importantly, both parties agreed that Plaintiff would be permitted to obtain campus classes that became available and that he was qualified to teach.   Also, under the agreement, Plaintiff would continue to teach at least three campus classes at CVC and three off-campus classes at the prison facilities.   Despite the agreement, additional campus classes at CVC, for which Plaintiff was qualified to teach, became available, but Plaintiff was never advised of their availability, never permitted to obtain them, and/or never even considered for them.

3.13    Additionally, subsequent to the agreement, Dean Johnson awarded another campus class to Ms. Simon; however, this time, the campus class awarded to Ms. Simon was one of Plaintiff's campus classes, which was a class that Plaintiff had been teaching for several years. Dean Johnson took that campus class away from Plaintiff without ever attempting to discuss the change with Plaintiff.   Plaintiff eventually learned of this change through a third party, not from Dean Johnson.   When Plaintiff requested a meeting with full-time faculty members at CVC to explore viable options with respect to scheduling campus classes, Plaintiff's request was denied. Subsequently, Plaintiff brought the ongoing matter to the attention of Dr. Jones, who is also African American, and in response, Dr. Jones simply chose not to take any action.

3.14    Thereafter, the schedule for the fall 2009 semester was set, and one of Plaintiff's three campus classes at CVC was awarded to Ms. Simon, who has less seniority, academic

credentials, and professional experience.  Additionally, the times of Plaintiff's two remaining campus classes at CVC were modified to accommodate an adjunct instructor, who is African American.  The only reason proffered to Plaintiff for the rescheduling of his two then remaining campus classes at CVC was that the adjunct instructor wanted to have his classes scheduled so that they were one right after the other.

3.15    In addition to the foregoing, there are several other instances that occurred, which demonstrate that Dean Johnson's actions against Plaintiff were racially motivated and/or constitute intentional race and/or color discrimination.  For example, over the Christmas holidays of 2008-09, Plaintiff signed an extra service contract for twenty-seven hours.  When Plaintiff worked all of the allotted extra service hours, Plaintiff asked Dean Johnson for some additional hours to complete his assignment.  Dean Johnson refused the request and advised Plaintiff that he had to complete all of the work for just the twenty-seven hours of compensation.  Plaintiff ultimately completed all of the work, which took a total of forty-four hours and noted the actual time to ensure proper reporting; however, upon receipt of Plaintiff's timesheet, Dean Johnson modified it to reflect that Plaintiff only actually spent twenty-seven hours.  Plaintiff only received compensation for twenty-seven of the forty-four hours that he actually worked.[3]  This conduct is racially discriminatory and/or retaliatory in light of the fact that during the summer of 2008, Ms. Simon, who was employed by Defendant at CVC at a lower wage than Plaintiff, was instructed by Dean Johnson to turn in a timesheet for more hours than she actually worked to ensure that she received the maximum amount of pay available to her.

3.16    Also, Dean Johnson had refused to provide Plaintiff with the evaluations from Plaintiff's class that Dean Johnson had visited during the fall 2007 semester.  Plaintiff requested

---

[3] Dr. Wimbish has since ordered that Plaintiff be paid for the additional hours; however, despite repeated requests for the payment, the check was only recently issued after Dr. Lassiter inquired of Dr. Wimbish, in a meeting on or about January 4, 2010, as to why the payment had not been made.

such evaluations on two separate occasions, yet, only received the evaluations on or about April 16, 2009. Subsequently, Dean Johnson e-mailed Plaintiff, after only one week, wanting to know when Plaintiff would return the evaluations with his comments and signature. Typically, Dean Johnson provided instructors at CVC with their evaluations shortly after his visits, but Dean Johnson chose to apply a different practice and/or standard when it came to Plaintiff's evaluations.

3.17   Additionally, Defendant's policies, procedures, guidelines, rules, and/or regulations require Plaintiff's release time to be documented in his contract; however, Dean Johnson never made such documentation. Further, upon information and belief, Defendant employed an African American instructional associate, Timica Hamilton, and Dean Johnson permitted her to work on her extra service contract classes during office hours, which is prohibited under CVC's policies, procedures, guidelines, rules, and/or regulations. This same instructional associate also had a campus course load that was larger than Plaintiff's course load, which is highly unusual given the historical practice of Defendant. Finally, Dean Johnson awarded a computer class, taught on campus at CVC, to an African American instructor, Mr. Freeman. Despite the aforementioned agreement, Dean Johnson never advised Plaintiff of its availability, never permitted Plaintiff with an opportunity to obtain it, and never even considered Plaintiff for the class. Ms. Simon, who Dean Johnson awarded a campus class taken from Plaintiff, was also qualified to teach the class awarded Mr. Freeman, and she could have been given that class rather than Dean Johnson taking away one of Plaintiff's campus classes at CVC.

3.18   The foregoing conduct of Dean Johnson, and others, demonstrates a pattern and/or history of race and/or color discrimination against Plaintiff, which is still ongoing. Dean Johnson's conduct constitutes unlawful employment practices and such conduct has adversely

affected Plaintiff's employment with Defendant.   Additionally, the foregoing conduct also evidences that Dean Johnson chose to retaliate against Plaintiff because of his opposition to the race and/or color discrimination.

3.19    With respect to all of the foregoing discriminatory actions and/or conduct, Dean Johnson and/or Defendant only provided Plaintiff with an alleged reason for Dean Johnson taking away one of Plaintiff's campus classes and giving it to Ms. Simon.   The proffered reason was that Dean Johnson gave Ms. Simon one of Plaintiff's campus classes because she only had one campus class at the time, and Plaintiff had three campus classes.   However, as evidenced above, this alleged reason fails because Dean Johnson could have given a different campus class to Ms. Simon, but instead, Dean Johnson chose to give the other available campus class to another African American instructor at CVC.

3.20    As set forth above, Plaintiff and Ms. Simon were the only full-time instructors within Defendant's prison program; however, Plaintiff had been a prison coordinator and instructor within Defendant's prison program for a longer tenure than Ms. Simon.   Despite this fact, Dean Johnson allowed Ms. Simon to obtain additional campus classes after he denied Plaintiff's similar request, and as such, Dean Johnson elected to provide Ms. Simon with preferential treatment, for no other reason than because of her race and/or color.

3.21    The rules imposed against Plaintiff by Dean Johnson regarding Plaintiff's ability to obtain additional campus classes are unique to Plaintiff, and moreover, they are in breach of the previous agreement reached between Plaintiff and Defendant.   As set forth above, Dean Johnson's arbitrary and capricious rules have not been applied to Ms. Simon, who held a similar faculty position to Plaintiff.   Additionally, as set forth above, Dean Johnson: (1) permitted Ms. Simon to turn in a timesheet for more hours than she actually worked to ensure that she received

the maximum amount of pay available to her, and at the same time, Dean Johnson forced Plaintiff to forego compensation for hours that Plaintiff had actually performed; (2) upon information and belief, permitted an African American instructional associate, Timica Hamilton, to work on her extra service contract during office hours, despite the fact that such conduct was prohibited under CVC's policies, procedures, guidelines, rules, and/or regulations; and (3) awarded a computer class taught on CVC's campus, to an African American instructor, Mr. Freeman, without ever advising Plaintiff of its availability, permitting Plaintiff with an opportunity to obtain it, and even considering Plaintiff for the class, despite the aforementioned agreement between Plaintiff and Defendant.

3.22    As a result of the foregoing discriminatory and/or retaliatory conduct, on or about April 22, 2009, Plaintiff filed a grievance against Dean Johnson pursuant to and in accordance with Defendant's policies, procedures, guidelines, rules, and/or regulations.  Also, on or about April 22, 2009, Plaintiff filed an EEOC Charge, based upon discrimination and retaliation, with the EEOC, which was dual-filed with the Texas Workforce Commission, Civil Rights Division. Despite the fact that Plaintiff sought protection and redress for the aforementioned wrongful conduct, the discriminatory and/or retaliatory treatment against Plaintiff continued, and more importantly, it intensified.

3.23    After Plaintiff filed his original EEOC Charge and original grievance, Dr. Jones retaliated against Plaintiff for filing his original EEOC Charge and original grievance.  On or about April 29, 2009, Dr. Jones was provided with a copy of Plaintiff's April 22, 2009 grievance because Dean Johnson had not responded, as was required by Defendant's policies, procedures, guidelines, rules, and/or regulations.  According to Defendant's policies, procedures, guidelines, rules, and/or regulations, Dean Johnson was required to discuss Plaintiff's grievance with

Plaintiff, and then provide Plaintiff with his written response, all within five business days. However, Dean Johnson failed to ever discuss Plaintiff's April 22, 2009 grievance with Plaintiff, and Dean Johnson provided Plaintiff with his written response after the time prescribed.

3.24    On or about April 30, 2009, Plaintiff sent Dean Johnson and Dr. Jones an e-mail in which Plaintiff stated that Dean Johnson's response "is factually incorrect on several counts and I will, if you so desire, be prepared to show you documentation of that when you and I meet to discuss my grievance."   Instead of discussing his April 22, 2009 grievance with Plaintiff, as was required by Defendant's policies, procedures, guidelines, rules, and/or regulations, Dr. Jones elected to only submit her written response to Plaintiff, which he received on or about May 6, 2009.   Dr. Jones' response violated Defendant's policies, procedures, guidelines, rules, and/or regulations because she was required to discuss the grievance with Plaintiff prior to submitting her written response.   However, no such discussion ever occurred prior to the time that Dr. Jones provided Plaintiff with her written response.

3.25    Although Dr. Jones failed to comply with Defendant's policies, procedures, guidelines, rules, and/or regulations by meeting with Plaintiff before submitting her written response, Dr. Jones met and/or had conversations with Dean Johnson, in order to gather information, prior to submitting her May 6, 2009 written response to Plaintiff.   Dr. Jones' written response was biased and, therefore, inherently flawed.   Dr. Jones' written response stated that "a charge of racial discrimination against Dean Johnson is a charge of racial discrimination against me (Dr. Jones)," as she approved Dean Johnson's actions and conduct.   Also, Dr. Jones' bias was demonstrated in her willingness to collaborate with others in writing her response, but not taking the time to discuss the matter with Plaintiff prior to submitting her response.   Dr. Jones sought information from those pre-inclined to support her biased view while ignoring Plaintiff's

admonition that Dean Johnson's written response was flawed.  Because Dr. Jones only sought information from those who supported her biased view, her written response perpetuated the errors contained in Dean Johnson's flawed written response.

3.26    On or about May 12, 2009, Dr. Jones met with Plaintiff, Dr. Tommy Thompson, who is Defendant's Faculty Association President ("Dr. Thompson"), and Debbie Speck, who is and has been CVC's Human Resources Director since Plaintiff's grievance was filed ("Ms. Speck").  During that meeting, Dr. Jones confirmed that she had not and was not monitoring any other CVC faculty in the same manner as she was monitoring Plaintiff.  Also, during that meeting, Plaintiff presented documents and/or asked questions that refuted Dr. Jones' written response, to which Dr. Jones responded by stating that Plaintiff was "manipulative."  In addition, during that meeting, Dr. Jones asked Plaintiff, on two occasions, if he wanted to continue as the prison coordinator of the state prison program, and in response on both occasions, Plaintiff confirmed that he did want to continue in that capacity; however, Dr. Jones stated, "I do not believe you. I feel you no longer want to be the coordinator."

3.27    Additionally, during the May 12, 2009 meeting, Plaintiff asked Dr. Jones, on two occasions, if she felt that Plaintiff had been treated fairly by Dean Johnson, and in response, Dr. Jones confirmed her belief that Dean Johnson's treatment towards Plaintiff had been fair.  When Plaintiff asked Dr. Jones if she felt Dean Johnson would treat him fairly going forward, Dr. Jones responded in the affirmative.  However, when Plaintiff then asked Dr. Jones why it would be necessary to have a third party in any future meetings between Dean Johnson and Plaintiff and why it would be necessary to limit Plaintiff's interaction with Dean Johnson by removing Plaintiff as the prison coordinator of the state prison program (both of which were

recommendations of Dr. Jones in her written response of May 6, 2009), Dr. Jones responded that such actions were necessary "to protect you."

3.28    Further, during the May 12, 2009 meeting, Dr. Jones reiterated her written threat concerning loss of income by stating that Defendant was only obligated to provide Plaintiff with five courses.  When Plaintiff pointed out that to do so would mean a large reduction in his income per year, Dr. Jones stated that she could not make decisions based on any one person's personal finances.  Dr. Jones then asked if she could send out an email saying that she was reconsidering her original response, but added that "it won't make any difference anyway."  She then asked for an additional week to rewrite her response, and not knowing any better, Plaintiff agreed.  However, to date, no modifications have been made to the May 6, 2009 written response of Dr. Jones.

3.29    During this same meeting with Dr. Thompson and Plaintiff, Dr. Jones stated that there were "performance reasons" why a class had been taken from Plaintiff; however, no performance review existed at that time that contained any indication that Plaintiff's performance was deficient in any way.  In fact, as previously stated, in Plaintiff's most recent evaluation, Plaintiff received an "exceeds standards of performance" rating, and his three year contract with Defendant was renewed on or about May 11, 2009.

3.30    Dr. Jones then asked Plaintiff to meet with her on or about May 19, 2009 to discuss a "proposal."  Subsequently, on or about May 20, 2009, Plaintiff met with Dr. Jones, and during that meeting, Dr. Jones informed Plaintiff that he would be relieved of his prison coordinator duties.  Dr. Jones then discussed various teaching options for the fall 2009 semester; however, none of the offerings provided Plaintiff with any protection from Dean Johnson.

3.31    Prior to being informed by Dr. Jones on or about May 20, 2009 that he was being relieved of his prison coordinator duties, Defendant had already notified its client, the Texas Department of Criminal Justice, of the change in leadership at the state prison program, without informing Plaintiff at that time.   Plaintiff was notified of the change during a telephone conversation with the Texas Department of Criminal Justice.   More specifically, during that conversation, the Texas Department of Criminal Justice inquired about the validity of the information given to it that Dean Johnson would be coordinating the state prison program.   This notification resulted in extreme personal embarrassment, professional humiliation, and emotional distress to both Plaintiff and his family.   Further, Defendant's conduct resulted in a loss of professional stature to Plaintiff because the Texas Department of Criminal Justice believed that Plaintiff had been terminated from his prison coordinator duties.

3.32    Since the time that Plaintiff filed his original EEOC Charge and original grievance, additional adverse and retaliatory employment actions were taken against Plaintiff. After Plaintiff filed his original EEOC Charge and original grievance, Plaintiff was removed as the prison coordinator for the state prison program, and he was replaced by an African American. The proffered reason given by Defendant for removing Plaintiff as prison coordinator of the state prison program was that Defendant was to limit the interface between Plaintiff and Dean Johnson; however, as this situation had progressed, the proffered reason has changed three times. First, it was changed to Defendant was trying to protect Plaintiff from Dean Johnson.   Next, it was changed to the prison program needed to be evaluated.   Finally, it was changed to Plaintiff wanted to be relieved of his prison coordinator duties.   Also, since the time that Plaintiff filed his original EEOC Charge and original grievance, Defendant reduced Plaintiff's summer hours in 2009 from 200 hours to 120 hours, resulting in a significant loss of compensation.   The new

African American employee who took over for Plaintiff as prison coordinator was allotted approximately 222 hours during the summer of 2009.

3.33    As a result of all of the continuing discriminatory and/or retaliatory conduct, on or about July 1, 2009, Plaintiff filed a grievance against Dr. Jones pursuant to and in accordance with Defendant's policies, procedures, guidelines, rules, and/or regulations.  Plaintiff forwarded this grievance to Dr. Wimbish within the time prescribed.

3.34    After Plaintiff filed his original EEOC Charge and/or his grievances against his supervisors at CVC because of their discriminatory and/or retaliatory treatment against him, Dr. Wimbish began a course of discriminatory and/or retaliatory actions against Plaintiff, which resulted in Plaintiff filing a grievance against her on or about August 5, 2009.[4]  This grievance was ultimately forwarded to Dr. Wright Lassiter, Defendant's Chancellor ("Dr. Lassiter"), pursuant to Defendant's policies, procedures, guidelines, rules, and/or regulations, who in turn appointed Executive Vice Chancellor Ed DesPlas to act as a "Grievance Officer."

3.35    On or about October 8, 2009, Plaintiff received a letter from Dr. Lassiter, in which Dr. Lassiter approved the binding recommendations written and issued by Mr. DesPlas on or about October 5, 2009, which consisted of four specific recommendations (the "Recommendations").  In his letter, Dr. Lassiter stated that the Recommendations require actions of the CVC Administration.  Further, in his letter, Dr. Lassiter suggested the use of his ombudsperson, Dr. Tully (who was previously utilized by Plaintiff and Dr. Wimbish, as noted above), to facilitate future meetings and interactions between Dr. Minger, Dean Johnson, and Plaintiff.  Dr. Lassiter's letter was addressed to both Plaintiff and Dr. Wimbish.

---

[4] As of the date that Plaintiff filed his grievance against Dr. Wimbish, Dr. Wimbish still had not provided Plaintiff with her response to his grievance against Dr. Jones.

3.36    The Recommendations reiterate that Plaintiff's grievance against Dr. Wimbish alleged that she violated and failed to follow Defendant's grievance policies, procedures, guidelines, rules, and/or regulations and that she had discriminated and retaliated against Plaintiff for him having filed grievances against Dean Johnson and Dr. Jones, as well as Plaintiff's original EEOC Charge.   The Recommendations acknowledge that Plaintiff had filed his original EEOC Charge regarding the matters at issue.   Further, while the Recommendations state that Defendant believed that Plaintiff was not harmed as a result of Dr. Wimbish's perceived violation and failure to follow Defendant's grievance policies, procedures, guidelines, rules, and/or regulations, the Recommendations state that "[t]he concern asserted by Mr. Daily does indicate a need for a brief training for Presidents and others who may preside over grievances."

3.37    The four specific recommendations comprising the Recommendations state the following:

(1)    "Mr. Daily should be assigned to Cedar Valley College on a full-time basis; splitting his load between the prison/jail and the college should be discontinued.   Mr. Daily needs to recognize that CVC is obligated to provide for his full time employment; extra service duties are contracted at the mutual agreement of the college and the faculty member."

(2)    "Mr. Daily should be consulted as he and his program coordinator collaborate to meet student and division needs in assigning the sections he will teach.   CVC management should strive to assemble a schedule for Mr. Daily that enables him to have an efficient and cohesive work day and work week.   By this, I mean that unnecessary large gaps of time between classes be avoided."

(3)    "Mr. Daily, his program coordinator (Ming[er]) and his dean (Johnson) should meet regularly (bi-weekly? – no less than monthly) with an ombudsperson to endeavor to improve working relationships within the division."

(4)    "Mr. Daily should be appropriately supported if he were to pursue a vacancy at another one of the DCCCD colleges.   Dr. Wimbish's response (9/08/09) to Mr. Daily's grievance against Dr. Jones stated 'It is important

for me to state that I will not do anything to hinder your transfer to another college.'"

3.38    Upon receipt of the Recommendations, Plaintiff and Dr. Thompson met with Dr. Wimbish regarding the Recommendations on or about October 12, 2009, which was just four days after the date of Dr. Lassiter's letter approving of and enclosing the Recommendations and a full two weeks prior to the deadline for the final revisions to the spring 2010 schedule.  Despite the fact that the Recommendations were binding (as confirmed by Defendant's own counsel), during that meeting, Dr. Wimbish expressed her extreme dissatisfaction with the Recommendations and stated that she was going to appeal the Recommendations.

3.39    During the October 12, 2009 meeting, Plaintiff and Dr. Wimbish agreed that the courses Plaintiff was set to start the following day at the state prison facility would be postponed by one week to allow time for the parties to map out a plan going forward.  That evening, Dr. Wimbish called Plaintiff at home and stated that she had checked with Mr. DesPlas and that she would implement the class changes beginning in the spring.  Then, Dr. Wimbish became hostile toward Plaintiff, and the following day, Plaintiff became aware of the fact that Dr. Wimbish was preparing a letter to send to Plaintiff that stated if Plaintiff failed to meet the class (which Dr. Wimbish and Plaintiff had previously agreed to postpone), Plaintiff would be subject to "disciplinary action, including termination."  Pursuant to Dr. Wimbish's threat (made less than twenty-four hours after Dr. Wimbish and Plaintiff had previously agreed to postpone the start of the classes), Plaintiff began teaching the classes at issue.

3.40    Two weeks later, on or about October 26, 2009, (the last day prior to the deadline for revisions to the spring 2010 schedule) and in an effort to get Plaintiff's schedule set and published in the spring 2010 schedule, Dr. Thompson waited outside Dr. Wimbish's office for about an hour to speak with her about the fact that despite the Recommendations, Plaintiff still

did not have a spring 2010 schedule.  Dr. Wimbish knew that Dr. Thompson was waiting to speak with her; however, she ignored Dr. Thompson's presence.

3.41    On or about November 4, 2009, Dr. Thompson and Plaintiff tried to visit with Dr. Wimbish for a few minutes about the lack of a spring 2010 schedule for Plaintiff; however, once again, Dr. Wimbish did not have time to discuss the issue.  Later that day, Dr. Wimbish called Dr. Thompson, at which time she committed to have Plaintiff's spring 2010 schedule to Plaintiff by November 6, 2009.  In that conversation, Dr. Wimbish advised Dr. Thompson that Plaintiff's credentials "might not be in order" which would preclude him from teaching in any capacity.  However, Plaintiff's credentials were reviewed: (a) when he was hired; (b) as a part of preparing for a regularly scheduled visit by the Southern Association of Colleges and Schools (SACS); (c) by SACS during their visit; and (d) by an internal auditor of Defendant.  No issues have ever been raised by Defendant prior to Dr. Wimbish's comment.

3.42    On or about November 6, 2009, Plaintiff received an e-mail informing him of what his classes would be for the spring 2010 semester; however, at no point was Plaintiff ever consulted about his spring 2010 schedule as mandated by the Recommendations.  Also, Plaintiff had previously provided Dr. Wimbish an e-mail on or about October 19, 2009, with some of the proposed classes for Plaintiff's spring 2010 schedule.   Dr. Wimbish never responded to Plaintiff's October 19, 2009 e-mail.  Plaintiff had also re-sent the e-mail on October 22nd and 27th to Dr. Wimbish, but once again, Dr. Wimbish never acknowledged and/or responded to any of Plaintiff's e-mails and attempts to confer about his spring 2010 schedule.  Dr. Wimbish (who was put in charge by Defendant of carrying out and implementing the Recommendations) purposefully and/or intentionally ignored and/or disregarded the Recommendations.

3.43    On or about November 9, 2009, Dr. Thompson and Plaintiff met with Ms. Speck, who possessed a copy of the Recommendations.  At that time, Dr. Thompson asked Ms. Speck to suggest to Dr. Wimbish that Dr. Vivian Lilly, who is the new Vice President of Instruction at CVC (replacing Dr. Jones), Dean Johnson, and Dr. Minger be provided with a copy of the Recommendations so that the parties could have a meaningful conversation on this matter at a meeting to "Discuss Spring Classes" that was called for by the CVC Administration to take place on or about November 10, 2009.

3.44    On or about November 10, 2009, Dr. Thompson and Plaintiff attended the "Discuss Spring Classes" meeting with Dr. Lilly and Dean Johnson.  Dr. Minger refused and/or failed to attend the meeting.  Also, the CVC Administration mandated that Ms. Simon attend the meeting even though there was no reason to include Ms. Simon in a discussion regarding the Recommendations.  During that meeting, Dr. Thompson and Plaintiff informed Dr. Lilly and Dean Johnson that it would be difficult if not impossible to "Discuss Spring Classes" because Dr. Wimbish had instructed Plaintiff not to discuss the Recommendations with anyone and the Recommendations were not previously provided to Dr. Lilly and Dean Johnson.  During the meeting, Dr. Lilly and Dean Johnson became aware that the spring 2010 schedule provided to Plaintiff via e-mail, on or about November 6, 2009, did not match the requirements of the Recommendations, although specifics could not be discussed at that time because of Dr. Wimbish's mandate.

3.45    The spring 2010 schedule provided to Plaintiff via e-mail, on or about November 6, 2009, violated the Recommendations because: (1) the schedule was established without any consultation and/or collaboration with Plaintiff, as mandated by Recommendation No. 1; (2) the schedule contained a prison assignment in violation of Recommendation No. 1; and (3) the

schedule did not provide for "an efficient and cohesive work day and work week," as mandated by Recommendation No. 2.  Additionally, during the November 10, 2009 meeting, Dr. Lilly and Dean Johnson stated that they had not seen the Recommendations prior to the meeting and, therefore, the classes were assigned without their knowledge of what the requirements were (as set forth in the Recommendations).  Since the Recommendations had not been communicated to them, it is no wonder that the schedule provided did not comply with what was recommended.

3.46    On or about November 11, 2009, Dr. Thompson called Denys Blell, who is Defendant's Executive Vice Chancellor of Human Resources ("Mr. Blell"), to ask Mr. Blell to meet with Plaintiff and Dr. Thompson in light of the fact that up until that point, none of the Recommendations had been acted on and/or followed.  Thereafter, on or about the same date, Dr. Wimbish e-mailed Plaintiff asking him what his concerns were with respect to her proffered spring 2010 schedule.  On or about November 12, 2009, Dean Johnson interrupted Plaintiff's class lecture and asked Plaintiff to send him the classes Plaintiff would like to have, and Plaintiff sent him such classes later that day (of course, Plaintiff previously sent such classes to Dr. Wimbish on three previous occasions in October 2009).

3.47    On or about November 16, 2009, Dean Johnson appeared at Plaintiff's office door without notice and wanted to discuss Plaintiff's spring 2010 schedule with him alone.  Even though that made Plaintiff uncomfortable and did not comport with Recommendation No. 2, Plaintiff discussed his spring 2010 schedule with Dean Johnson, and they agreed on a set of classes (at that time, Plaintiff feared that if he did not meet with Dean Johnson, Plaintiff would be accused of insubordination and be terminated as Dr. Wimbish had previously threatened Plaintiff with such action in or around October 2009).

3.48    After the meeting on or about November 16, 2009, Plaintiff sent Dean Johnson an e-mail to confirm what they had agreed upon with respect to Plaintiff's spring 2010 schedule; however, the next morning, Dean Johnson sent Plaintiff an e-mail, in which he confirmed their discussion but made a significant change to Plaintiff's spring 2010 schedule in that Dean Johnson took away a class from Plaintiff and gave it to Ms. Simon (this is not the first time that Ms. Simon had been shown preferential treatment of this very nature).   Plaintiff later spoke to Ms. Simon, who had previously stated to Plaintiff that she preferred a different class that was set to begin at an earlier time, and they quickly agreed to a change in their respective schedules so that a class was not going to be taken away from Plaintiff and given to Ms. Simon.

3.49    However, subsequently, Ms. Simon changed her position and began stating that she wanted the class back since it had been awarded to her.   It is important to note that the class in question had been taught by Plaintiff for several years prior to the fall 2009 semester, and Dean Johnson had taken that class away from Plaintiff and had given it to Ms. Simon for the fall 2009 semester, over Plaintiff's objection (this occurred prior to Plaintiff filing his original EEOC Charge and original grievance, and formed a apart of the basis for those filings).   During the meeting on or about November 16, 2009, Dean Johnson had agreed to give the class back to Plaintiff; however, less than twenty-four hours after the agreement was made, Dean Johnson took it back away from Plaintiff and returned it to Ms. Simon because she had objected.

3.50    Subsequently, Dr. Thompson and Plaintiff were notified that they would meet with Ms. Speck, Dr. Lilly, Dean Johnson, and Dr. Minger on the morning of November 20, 2009 to discuss Plaintiff's spring 2010 schedule.  Dr. Thompson and Plaintiff met with Ms. Speck on or about November 19, 2009, during which time they asked her what had prompted the meeting. Thereafter, on the morning of November 20, 2009, Ms. Speck sent an e-mail canceling the

meeting set for that morning.  Dr. Thompson then arranged to for Plaintiff and him to meet with at least Dr. Lilly and Ms. Speck (once again, Dr. Minger refused and/or failed to attend this meeting; Dr. Minger previously refused and/or failed to meet with Plaintiff on or about November 10, 2009).

 3.51 At the meeting on or about November 20, 2009, between Plaintiff, Dr. Thompson, Dr. Lilly, and Ms. Speck, Plaintiff expressed his concerns about the spring 2010 schedule that he had been provided (the revised spring 2010 schedule given to Plaintiff by Dean Johnson).  For example, one of the classes given to Plaintiff was a class that had not been offered on campus for many years, and it was not likely not to make (have sufficient students to hold class).  In that regard, Plaintiff simply wanted to know what would happen if that class did not in fact make.  As another example, one of the other classes given to Plaintiff had historically only had an average enrollment of four students for the past two years, and it too was unlikely to make.  Further, a third class offered to Plaintiff had zero students in previous spring semesters and was, therefore, unlikely to make.  Such classes ultimately did not make, and to date, such classes have not been replaced and no plan has been established to address the lack of classes.

 3.52 Further, the proposed spring 2010 schedule would also require Plaintiff to develop new online curriculum, which is commonly referred to as "shells," for four different courses. Despite the fact that the customary practice had been that the teacher selected for such classes was given access to the existing "shells," per Dean Johnson's e-mail of November 17, 2009, Plaintiff was advised that he would not be given access to the existing "shells" and that Plaintiff was to create his own "shells," which would take considerable time and effort.  Because creating new "shells" would take considerable time and effort, Plaintiff inquired about whether he would be compensated for the extra work (which Plaintiff understood to be the typical and historical

practice of Defendant); however, Plaintiff never received any response.  In addition, those who have discriminated and/or retaliated against Plaintiff in the past are responsible for evaluating the new "shells" that Plaintiff is being forced to create, as well as Plaintiff's job performance going forward.

3.53    As set forth above, the spring 2010 schedule that Dr. Wimbish, Dean Johnson, and/or Dr. Minger have created is not the result of any consultation and/or collaboration with Plaintiff (as required by the Recommendations).  Furthermore, earlier this semester, Plaintiff was informed that the prison classes that he had been teaching during the fall 2009 semester would not end on time (December 10, 2009).  Plaintiff was instructed that he would be required to teach beyond December 10, 2009 despite the fact that this is out of the ordinary and would require Plaintiff to teach during the Christmas holidays and break.

3.54    When Plaintiff asked if he would receive an extra service contract for this additional work, which is the historical and customary practice for any instructor asked to teach beyond his or her normal contractual terms, the response was a resounding "no" from Defendant. However, the reason why this situation arose was because of Defendant's removal of Plaintiff as the prison coordinator for the state prison; the class started late because the CVC Administration chose to unilaterally remove Plaintiff from that position after he filed his original EEOC Charge and grievance.

3.55    Earlier this semester, while Plaintiff was waiting for his prison classes to begin for the fall 2009 semester, Plaintiff worked on the campus of CVC fulfilling his duties, and Plaintiff notified Defendant of same.  Defendant never objected to Plaintiff's reasonable attempt to fulfill his contractual duties in this manner.  However, Defendant then contended that Plaintiff's previous work does not count so that it could attempt to force Plaintiff to work over the

Christmas holidays and break without compensation.  Recently, Defendant changed its position yet again and informed Plaintiff that he would not be allowed to teach the prison classes beyond December 10, 2009, and instead, the CVC Administration decided to hire adjuncts to replace Plaintiff mid-semester and complete the classes that Plaintiff had been teaching during the fall 2009 semester.  This is not in the best interest of the students and is retaliatory as it is designed to limit Plaintiff's income.

3.56    As set forth above, when Plaintiff inquired about extra service for teaching beyond December 10, 2009, the response was "no;" however, it ultimately cost Defendant the same amount of money to hire the adjuncts as it would have cost Defendant to issue Plaintiff an extra service contract for the remaining time.  Additionally, and as a response to Defendant's denial of extra service hours, Plaintiff intended to work without compensation beyond December 10, 2009, as it was in the best interests of his students for him to remain as their instructor.  As a result, it cost the Defendant more money to hire an adjunct professor to finish teaching the prison class than it would have if Defendant would have allowed Plaintiff to finish teaching the class.  The only logical explanation for Defendant's actions and/or conduct is that they were taken solely for retaliatory purposes.

3.57    Additionally, Defendant is attempting to limit Plaintiff's income in retaliation for opposing racial and/or color discrimination and/or for filing his original EEOC Charge and grievance by taking away extra service classes that he has historically and customarily taught and/or by reducing the number of extra service classes that he has historically and customarily been awarded.  Although Defendant may contend that Plaintiff has no right to extra service classes, in turn, Defendant may not take adverse employment actions, such as taking away and/or reducing Plaintiff's extra service classes, for the sole purpose of retaliating against Plaintiff.

Even though Plaintiff has been provided an interpretation of Recommendation No. 1 (by Mr. DesPlas) to mean that the intent was to ensure that Plaintiff's base load classes were all classes taught on CVC's campus and not to prevent Plaintiff from teaching prison classes as extra service, Defendant has denied extra service at the prison.

3.58    Once again, the spring 2010 schedule assigned to Plaintiff was not the result of any collaboration and/or consultation with Plaintiff.   According to Recommendation No. 2, Plaintiff's class schedule should not only result from collaboration and consultation, but also, it should meet the students' needs; however, removing Plaintiff as the instructor from three of his classes mid-semester does not meet the students' needs; it only serves the vindictive purposes of a select few.  Although Dr. Minger eventually (but only very recently) met with Plaintiff, as she was required to do under the Recommendations, by the time Dr. Minger and Plaintiff met, all decisions had already been made by the CVC Administration with respect to Plaintiff's spring 2010 class schedule.

3.59    Also, according to Recommendation No. 3, Plaintiff, Dr. Minger, and Dean Johnson were directed to meet regularly (at least monthly) with an ombudsperson; however, to date, no meetings have occurred and no meetings have been scheduled, which is no surprise due to Dr. Minger's previous attitude and unwillingness to meet with Plaintiff, as previously set forth above.   Additionally, rather than use Dr. Tully (as suggested by the Recommendations), Dr. Wimbish, Dean Johnson, and/or Dr. Minger have refused to allow Dr. Tully to serve as the ombudsperson, despite the fact that Plaintiff and Dr. Wimbish used Dr. Tully, in 2008, to serve as the ombudsperson at an early stage in this matter.  Currently, the CVC Administration has insisted upon and still insists upon using a third-party company that is unfamiliar with Defendant's policies, procedures, guidelines, rules, and/or regulations.

3.60    Additionally, despite Recommendation No. 4 and the fact that Plaintiff has submitted requests and/or applications for a transfer to another college within DCCCD, Defendant has informed Plaintiff that Defendant cannot do anything to assist Plaintiff because it does not have a "Special Transfer" Policy.   However, Defendant does in fact have such a policy, and it has been utilized in the past.   When the "Special Transfer" Policy was pointed out to Defendant, Defendant simply responded that it was not meant for a situation such as the one that Plaintiff is currently experiencing.   Further, Plaintiff applied for a transfer to Richland College, a part of DCCCD, several months ago.   The ad for the transfer stated that "[t]he College will generally require one (1) to two (2) weeks for review and consideration of internal transfers," and "[u]pon final decision, internal applicants will be notified of next actions (i.e., transfer or external advertising);" however, after several months, Plaintiff was only just recently asked to interview for the position, rather than being notified of a transfer or that the position is being advertised, and he was quickly notified that he would not be transferred to the Richland College campus.   Upon information and belief, this decision was made subsequent to Dr. Minger making disparaging remarks about Plaintiff to administrators from Richland College.

3.61    In addition to all of the foregoing matters, Defendant has taken additional discriminatory and/or retaliatory actions against Plaintiff since he filed his original EEOC Charge and original grievance.   For example, Defendant purposefully and/or intentionally chose not to provide Plaintiff with his fall 2009 schedule until the very last minute (despite repeated requests for his fall 2009 schedule), and as a direct result, Plaintiff was unable to obtain extra service classes that he had historically taught in the past, and he has been damaged financially. Also, despite the Recommendations, the CVC Administration purposefully chose to disregard the Recommendations as long as they could, and as a result of the delay, Plaintiff did not receive

his spring 2010 schedule until the last minute, which prohibited Plaintiff from obtaining extra service classes that he had historically taught in the past, damaging Plaintiff financially.

3.62    Additionally, this past semester, Dean Johnson informed a student that Plaintiff had not made a voluntary charitable contribution (which are supposed to be anonymous), and Dean Johnson provided that student with Plaintiff's personal and private contact information, which resulted in the student calling Plaintiff at home to inquire about the contribution.  Further, Dr. Minger recently sent Plaintiff a very derogatory and threatening e-mail (she has subsequently sent an e-mail apologizing for her inappropriate conduct, but it should have never been sent in the first place).  Moreover, this past semester, the CVC Administration began retaliating against Plaintiff's spouse, who is also an instructor at CVC under the control and supervision of Dr. Wimbish.  Because of Plaintiff's original EEOC Charge and original grievance, the CVC Administration took away a class from Plaintiff's spouse that she had taught for many years without a single student complaint and with no negative performance reviews.  The only reason proffered by the CVC Administration for this adverse and/or retaliatory action is that CVC is going in a different direction.  The foregoing retaliation has resulted in financial damage to Plaintiff and his family, and it will continue for the foreseeable future.

3.63    Based upon the foregoing conduct, constituting continued discriminatory and/or retaliatory conduct by Defendant against Plaintiff, in or around December 2009, Plaintiff supplemented his original EEOC Charge and his dually-filed complaint and/or charge with the Texas Workforce Commission, Civil Rights Division.

3.64    Dr. Tully, acting as the personal ombudsperson of Dr. Lassiter, asked Plaintiff to meet with her on or about January 11, 2009.  Dr. Thompson attended the meeting with Plaintiff, and during that meeting, Dr. Tully stated that Dr. Lassiter viewed the matter as a "campus issue"

and he would, therefore, not intervene.  Further, Dr. Tully stated that Plaintiff would be assigned to CVC under the control of Dr. Wimbish for the indefinite future.

3.65    The foregoing discriminatory and/or retaliatory conduct has damaged Plaintiff physically, emotionally, and mentally.   Such actions have damaged Plaintiff financially, but more importantly, they have resulted in Plaintiff suffering from undue stress, which has caused Plaintiff to seek professional counseling to cope with the traumatic impact on Plaintiff, his family, and his career.

3.66    The foregoing conduct of Defendant demonstrates a policy, pattern, and/or history of discrimination and/or retaliation against Plaintiff.  Since the time when Plaintiff first filed his original EEOC Charge and original grievance, Plaintiff has continuously been subjected to race and/or color discrimination, as well as retaliation and adverse employment actions, by Defendant and the CVC Administration, which is still ongoing.  Specifically, Defendant, through the CVC Administration, has created a policy of racial discrimination and/or retaliation against Plaintiff. This policy has been carried out by Dr. Wimbish, Dean Johnson, Dr. Minger, and/or Dr. Jones. Defendant and the CVC Administration have retaliated against Plaintiff for opposing the race and/or color discrimination, filing grievances with Defendant based upon such discriminatory and/or retaliatory conduct, and/or filing the original EEOC Charge.  The foregoing conduct of Defendant constitutes unlawful employment practices, which has adversely affected Plaintiff's employment with Defendant and injured and/or damaged Plaintiff.

**IV.**
**CAUSES OF ACTION**

4.1    ***Alternative Pleadings.***    To the extent necessary, each of the claims set forth below is pleaded in the alternative.

## A.     Count One:

### Violation of Title VII of the Civil Rights Act of 1964:
### Discrimination and Retaliation.

4.2     To the extent necessary, Paragraphs 1.1 through 4.1 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.3     As set forth above, Defendant's actions amount to discrimination and retaliation, and constitute violations under Title VII.  Defendant is prohibited from discriminating against Plaintiff based on his race and/or color under Title VII, and further, Defendant is prohibited from retaliating against Plaintiff because he opposed such discrimination.  Therefore, Defendant has violated Title VII.

4.4     As a result of the forgoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or in equity, including but not limited to his damages resulting from said conduct by Defendant in an amount to be proven and/or determined at the time of trial, injunctive relief, equitable relief, and his attorneys' fees and costs.

## B.     Count Two:

### Violation of Chapter 21 of the Texas Labor Code:
### Discrimination and Retaliation.

4.5     To the extent necessary, Paragraphs 1.1 through 4.4 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.6     As set forth above, Defendant's actions amount to discrimination and retaliation, and constitute violations under Chapter 21 of the Texas Labor Code.  Defendant is prohibited

from discriminating against Plaintiff based on his race and/or color under Chapter 21 of the Texas Labor Code, and further, Defendant is prohibited from retaliating against Plaintiff because he opposed such discrimination.   Therefore, Defendant has violated Chapter 21 of the Texas Labor Code.

4.7     As a result of the forgoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or in equity, including but not limited to his damages resulting from said conduct by Defendant in an amount to be proven and/or determined at the time of trial, injunctive relief, equitable relief, and his attorneys' fees and costs.

**C.     Count Three:**

**Violations of the United States Constitution, First and Fourteenth Amendments, and the Texas Constitution, Article I, § 8: Free Speech.**

4.8     To the extent necessary, Paragraphs 1.1 through 4.7 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.9     As set forth above, Defendant's actions constitute violations of 42 U.S.C. § 1983, which prevents Defendant from depriving Plaintiff of his rights, privileges, and/or immunities secured under the United States Constitution.

4.10    Defendant deprived Plaintiff of his right to free speech, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment.   Additionally and/or alternatively, Defendant deprived Plaintiff of his right to free speech, as secured by Article I, Section 8 of the Texas Constitution.

4.11    Defendant violated Plaintiff's right to free speech when Defendant punished and/or retaliated against him when Plaintiff opposed and spoke out against the discriminatory

employment practices and actions being taken by Defendant.  Plaintiff spoke out about and complained of racial and/or color discrimination as to him and racial and/or color discrimination that was becoming and/or had become the policy, practice, and/or custom at CVC through the CVC Administration and/or that were made, an act of, caused to happen, and/or ratified by policymakers for Defendant, through action and/or inaction.  Defendant violated Plaintiff's right to free speech when Defendant took adverse and/or retaliatory actions against Plaintiff because of Plaintiff's complaints of unlawful discrimination and retaliation, which Plaintiff made internally through Defendant's grievance procedure, as well as externally to the EEOC and outside his general and/or direct chain of command and/or outside the course and scope of his normal duties.  Defendant's conduct constitutes violations of Plaintiff's right to free speech.

4.12    As a result of the forgoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or in equity, including but not limited to his damages resulting from said conduct by Defendant in an amount to be proven and/or determined at the time of trial, injunctive relief, equitable relief, and his attorneys' fees and costs.

**D.      Count Four:**

**Violations of the United States Constitution, Fifth and Fourteenth Amendments,
and the Texas Constitution, Article I, § 19: Procedural and Substantive Due Process.**

4.13    To the extent necessary, Paragraphs 1.1 through 4.12 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.14    As set forth above, Defendant's actions constitute violations of 42 U.S.C. § 1983, which prevents Defendant from depriving Plaintiff of his rights, privileges, and/or immunities secured under the United States Constitution.

4.15    Defendant deprived Plaintiff of his right to procedural and substantive due process, as secured by the Fifth and Fourteenth Amendments to the United States Constitution. Additionally and/or alternatively, Defendant deprived Plaintiff of his right to procedural and substantive due process, as secured by Article I, Section 19 of the Texas Constitution.

4.16    Defendant violated Plaintiff's right to procedural due process by depriving Plaintiff of his protected property interest in his employment contracts and agreements with Defendant and/or the Recommendations, without due process and/or due course of law. Additionally or alternatively, Defendant violated Plaintiff's right to procedural due process by diminishing Plaintiff's protected property interest in his employment contracts and agreements with Defendant and/or the Recommendations, without due process and/or due course of law. Additionally or alternatively, Defendant violated Plaintiff's right to procedural due process by depriving Plaintiff of his protected liberty interest in his good name and reputation, as well as his ability to pursue his chosen profession, without due process and/or due course of law. Additionally or alternatively, Defendant violated Plaintiff's right to procedural due process by diminishing Plaintiff's protected liberty interest in his good name and reputation, as well as his ability to pursue his chosen profession, without due process and/or due course of law. Additionally or alternatively, Defendant violated Plaintiff's right to procedural due process by depriving, diminishing, and/or interfering with Plaintiff's right to free speech, his right to be free from discrimination based on race and/or color, and/or his right to be free from retaliation for opposing unlawful discrimination, without due process and/or due course of law.  Plaintiff was entitled to a hearing and an opportunity for redress of his claims of unlawful discrimination and retaliation, which are provided for by law; however, Defendant failed and/or refused to provide Plaintiff with the minimal procedural due process and/or the procedural redress system

incorporated into Defendant's policies, procedures, guidelines, rules, and/or regulations, effectively denying Plaintiff the due process rights to which he was entitled, thus, violating his right to procedural due process guaranteed by the United States and Texas Constitutions.

4.17   Additionally or alternatively, Defendant violated Plaintiff's right to procedural due process by taking adverse and/or retaliatory employment actions against him, without cause and/or for no other reason than because of unlawful discrimination and/or Plaintiff's opposition to Defendant's unlawful discrimination.   Defendant's failure and/or refusal to provide a non-discriminatory cause and/or reasons for taking adverse and/or retaliatory employment actions against Plaintiff, in conjunction with Defendant's failure and/or refusal to offer the proper procedural review of Plaintiff's allegations, constitute violations of Plaintiff's constitutional right to procedural due process.

4.18   Moreover, Plaintiff also possesses a claim against Defendant for violation of substantive due process for Defendant's arbitrary, capricious, unreasonable, and/or irrational actions against taken him.   Additionally or alternatively, Plaintiff has been deprived of his protected and fundamental rights without due process of laws in an arbitrary, capricious, unreasonable, and/or irrational manner.

4.19   Defendant's actions and/or conduct further constitute a deprivation of due process, as each and all of the above acts and/or omissions were made in recognition of, as a part of, and/or as a result of the policies, practices, and/or customs of Defendant and were made, an act of, caused to happen, and/or ratified by policymakers for Defendant, through action and/or inaction.   Such actions and/or conduct were non-legislative in nature and deprived Plaintiff of his fundamental rights and/or property and/or liberty interests.   Additionally or alternatively, such actions and/or conduct taken by Defendant against Plaintiff were non-legislative and all were

arbitrary, capricious, unreasonable, and/or irrational state action, depriving Plaintiff of his fundamental rights and/or property and/or liberty interests.

4.20    As a result of the forgoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or in equity, including but not limited to his damages resulting from said conduct by Defendant in an amount to be proven and/or determined at the time of trial, injunctive relief, equitable relief, and his attorneys' fees and costs.

**E.    Count Five:**

**Violations the United States Constitution, Fourteenth Amendment,
and the Texas Constitution, Article I §§ 3 and 3a: Equal Protection.**

4.21    To the extent necessary, Paragraphs 1.1 through 4.20 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.22    As set forth above, Defendant's actions constitute violations of 42 U.S.C. § 1983, which prevents Defendant from depriving Plaintiff of his rights, privileges, and/or immunities secured under the United States Constitution.

4.23    Defendant deprived Plaintiff of his right to equal protection, as secured by the Fourteenth Amendment to the United States Constitution.   Additionally and/or alternatively, Defendant deprived Plaintiff of his right to equal protection, as secured by Article I, Sections 3 and 3a of the Texas Constitution.

4.24    Defendant violated Plaintiff's right to equal protection by failing and/or refusing to provide Plaintiff equal treatment based upon Plaintiff's race and/or color and/or by showing preferential and/or special treatment to African American employees.  Defendant deprived and/or diminished Plaintiff's right to equal protection by discriminating against him based upon his race

and/or color.   Additionally or alternatively, Defendant's conduct constituted and/or arose to a pattern of repeated discrimination and/or Defendant's conduct has an opportunity to be repeated against persons similarly situated to Plaintiff.   Defendant's conduct constitutes violations of Plaintiff's right to equal protection.

4.25    As a result of the forgoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or in equity, including but not limited to his damages resulting from said conduct by Defendant in an amount to be proven and/or determined at the time of trial, injunctive relief, equitable relief, and his attorneys' fees and costs.

**F.     Count Six:**

**Violations of 42 U.S.C. § 1981.**

4.26    To the extent necessary, Paragraphs 1.1 through 4.25 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.27    As set forth above, Defendant's actions constitute violations of 42 U.S.C. § 1981,[5] which entitles Plaintiff to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by all citizens, and shall be subject to like punishment, pains, and penalties of every kind, and to no other.   Additionally or alternatively, Defendant's conduct against Plaintiff violated his rights protected by 42 U.S.C. § 1981 because such conduct by Defendant constituted impairment by discrimination and/or impairment under color of State law.

4.28    As a result of the forgoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or

---

[5] To the extent necessary, this claim is brought through and/or by 42 U.S.C. § 1983.

in equity, including but not limited to his damages resulting from said conduct by Defendant in an amount to be proven and/or determined at the time of trial, injunctive relief, equitable relief, and his attorneys' fees and costs.

**G.     Count Seven:**

### Violations of 42 U.S.C. § 1985.

4.29     To the extent necessary, Paragraphs 1.1 through 4.28 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.30     As set forth above, Defendant's actions constitute violations of 42 U.S.C. § 1985,[6] which prohibits Defendant from depriving Plaintiff of his rights and privileges afforded under law, and as such, Defendant is and was prohibited from conspiring for the purpose of depriving, either directly or indirectly, Plaintiff of the equal protection of the laws, or of equal privileges and immunities under the laws.  Because Defendant did and/or caused to be done, acts in furtherance of the deprivation and discrimination, and Plaintiff has been injured in his person and/or property, and/or has been deprived of having and exercising rights and/or privileges of a citizen of the United States, Plaintiff brings this action for the recovery of damages occasioned by such injury or deprivation, against Defendant.

4.31     As a result of the forgoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or in equity, including but not limited to his damages resulting from said conduct by Defendant in an amount to be proven and/or determined at the time of trial, injunctive relief, equitable relief, and his attorneys' fees and costs.

---

[6] To the extent necessary, this claim is brought through and/or by 42 U.S.C. § 1983 and/or 42 U.S.C. § 1981.

**H.**     **Count Eight:**

### Violation of Chapter 106 of the Texas Civil Practices and Remedies Code: Discrimination Because of Race and/or Color.

4.32     To the extent necessary, Paragraphs 1.1 through 4.31 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.33     As set forth above, Defendant's actions constitute violations of Chapter 106 of the Texas Civil Practices and Remedies Code, which prevents and/or prohibits Defendant from refusing to grant a benefit to Plaintiff, imposing an unreasonable burden on Plaintiff, and/or refusing to award a contract to Plaintiff because of his race and/or color.

4.34     As a result of the forgoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded by Chapter 106 of the Texas Civil Practice and Remedies Code and/or under law and/or in equity, including but not limited to his damages resulting from said conduct by Defendant in an amount to be proven and/or determined at the time of trial, injunctive relief, and his attorneys' fees and costs.

**I.**     **Count Nine:**

### Breach of Contract.

4.35     To the extent necessary, Paragraphs 1.1 through 4.34 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.36     As set forth above, Defendant breached Plaintiff's employment contracts and/or agreement by failing and/or refusing to abide by and/or comply with the terms thereof and/or by failing and/or refusing to abide by and/or comply with the terms of the Recommendations. Additionally or alternatively, because Defendant's policies, procedures, guidelines, rules, and/or

regulations provide express contractual terms regarding Plaintiff's employment with Defendant, Defendant breached Plaintiff's employment contract by not adhering to its own policies, procedures, guidelines, rules, and/or regulations designated to apply to specific incidences as alleged herein, including but not limited to the prohibition of consideration of race and/or color in decisions regarding Plaintiff's employment with Defendant. Defendant violated its own policies, procedures, guidelines, rules, and/or regulations by using race and/or color in making determinations about Plaintiff's employment with Defendant.  Defendant's conduct and/or actions constitute a breach of Plaintiff's employment contracts and/or agreements.

4.37   As a result of Defendant's breach, Plaintiff was denied rights, benefits, and/or remedies contractually afforded to Plaintiff by his contracts and/or agreements, as well as by Defendant's policies, procedures, guidelines, rules, and/or regulations.

4.38   As a result of the foregoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded by Chapter 38 of the Texas Civil Practice and Remedies Code and/or under law and/or in equity, including but not limited to his damages resulting from said breach by Defendant in an amount to be proven and/or determined at the time of trial, equitable relief, and his attorneys' fees and costs.

**J.   Count Ten:**

**Federal Declaratory Judgment Act.**

4.39   To the extent necessary, Paragraphs 1.1 through 4.38 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.40   Pursuant to 28 U.S.C. §2201, Plaintiff seeks judgment declaring that Defendant violated Plaintiff's constitutional rights, violated and/or breached Plaintiff's employment

contracts and/or agreements, violated its own policies, procedures, guidelines, rules, and/or regulations, and/or violated state and/or federal law.

## V.
## REQUESTED RELIEF

5.1     As the direct and/or proximate result of the actions and/or conduct of Defendant complained of herein, Plaintiff has suffered, and continues to suffer, from intentional discrimination and/or discriminatory treatment, as well as adverse employment actions and retaliation, which have damaged and caused, and continues to damage and cause, Plaintiff to experience damages, emotional distress, and mental anguish.  Additionally, Defendant violated Plaintiff's constitutional rights as set forth more specifically above.  As such, Plaintiff seeks to recover from Defendant, his actual and/or economic damages occasioned by the wrongful acts of Defendant herein described, in amounts that are within the jurisdictional limits of this Court to be proven and/or determined at the time of trial.

5.2     As to claims under Title VII, Plaintiff herein sues Defendant pursuant to 42 U.S.C. §§ 2000e *et seq*.  All of Defendant's conduct was under color of law.  Accordingly, Plaintiff seeks recovery of the full measure of relief and damages provided by Title VII against Defendant, including but not necessarily limited to damages for his loss of wages, past and future, the harm to his personal and professional reputation, out-of-pocket losses and/or expenses, emotional pain and suffering, inconvenience, mental anguish, and other pecuniary and non-pecuniary losses in an amount within the jurisdictional limits of this Court to be proven at trial.  Plaintiff also seeks back pay and front pay damages from Defendant in the amount equal to the difference between the wages actually received by Plaintiff and the wages Plaintiff would have received had he not been discriminated against, together with an additional amount as

compensatory damages, in addition to reasonable and necessary attorneys' fees and any and all other equitable, injunctive, and compensatory relief which may be available.

5.3     As to claims under Chapter 21 of the Texas Labor Code, Plaintiff herein sues Defendant pursuant to Chapter 21 of the Texas Labor Code, including but not limited to Sections 21.051, 21.055, 21.254, 21.258, 21.2585, and 21.259 of the Texas Labor Code.   All of Defendant's conduct was under color of law.   Accordingly, Plaintiff seeks recovery of the full measure of relief and damages provided by Chapter 21 of the Texas Labor Code against Defendant, including but not necessarily limited to damages for his loss of wages, past and future, the harm to his personal and professional reputation, out-of-pocket losses and/or expenses, emotional pain and suffering, inconvenience, mental anguish, and other pecuniary and non-pecuniary losses in an amount within the jurisdictional limits of this Court to be proven at trial.   Plaintiff also seeks back pay and front pay damages from Defendant in the amount equal to the difference between the wages actually received by Plaintiff and the wages Plaintiff would have received had he not been discriminated against, together with an additional amount as compensatory damages, in addition to reasonable and necessary attorneys' fees and any and all other equitable, injunctive, and compensatory relief which may be available.

5.4     As to claims for federal violations of the United States Constitution and federal statutes, Plaintiff herein sues Defendant pursuant to 42 U.S.C. § 1983.[7]   All of Defendant's conduct was under color of law.   Accordingly, Plaintiff seeks recovery of the full measure of relief and damages against Defendant, including but not limited to compensatory damages and/or nominal damages (including mental anguish and emotional distress damages), consequential and

---

[7] To the extent necessary, as to claims for violations of 42 U.S.C. §§ 1981 and/or 1985, Plaintiff herein sues Defendant pursuant to 42 U.S.C. § 1983.

incidental damages, and any and all other equitable, injunctive, and compensatory relief which may be available under law and/or in equity.

5.5     As to claims for state violations of the Texas Constitution, Plaintiff herein sues Defendant pursuant to the Texas Constitution.   Accordingly, Plaintiff seeks recovery of all equitable relief which may be available under law and/or in equity.

5.6     As to claims for violations of Chapter 106 of the Texas Civil Practices and Remedies Code, Plaintiff seeks recovery of any and all remedies afforded by Chapter 106 of the Texas Civil Practice and Remedies Code and/or under law and/or in equity, including but not limited to his damages resulting from said conduct by Defendant in an amount to be proven and/or determined at the time of trial, injunctive relief, and his attorneys' fees and costs.

5.7     As to claims for breach of employment contract, Plaintiff sues Defendant pursuant to Texas law and Chapter 38 of the Texas Civil Practice and Remedies Code.   Because Plaintiff has suffered substantial damages from Defendant's breach, Plaintiff seeks recovery of any and all remedies afforded by Chapter 38 of the Texas Civil Practice and Remedies Code and/or under law and/or in equity, including but not limited to compensatory damages, consequential and incidental damages, attorneys' fees, and any and all other equitable and compensatory relief which may be available to and/or recoverable by Plaintiff.

5.8     As to claims under the Federal Declaratory Judgment Act, Plaintiff herein sues Defendant pursuant to 28 U.S.C. §2201, and as such, Plaintiff seeks a judgment declaring that Defendant violated Plaintiff's constitutional rights, violated and/or breached Plaintiff's employment contracts and/or agreements, violated its own policies, procedures, guidelines, rules, and/or regulations, and/or violated state and/or federal law.

5.9     In addition to Plaintiff's damages sought herein, Plaintiff seeks an order from this Court enjoining Defendant from discriminating against its employees based on their race and/or color and from retaliating against its employees for opposing unlawful discrimination.  Given the constitutional violations of Defendant, such injunctive relief is available.  Plaintiff has suffered and will suffer irreparable harm if Defendant is not enjoined as requested, and further, Plaintiff is without any other adequate remedy at law.

## VI.
## FEES, COSTS, AND INTEREST

6.1     Plaintiff has retained the law firm of Hill Gilstrap, P.C. to represent him in connection with this matter, and has agreed to pay for such reasonable and necessary services.  In addition to and without waiving and/or limiting any other relief requested in this Complaint, Plaintiff is entitled to and seeks to recover his reasonable and necessary attorneys' fees and costs incurred and to be incurred in bringing this suit and in all appeals of this suit, as permitted by law, in equity, and/or pursuant to 42 U.S.C. §§ 1981, 1983, 1988(b), and 2000e-5(k), TEX. LAB. CODE § 21.259, and/or Chapters 38 and 106 of the Texas Civil Practice and Remedies Code.

6.2     Also, pursuant to 42 U.S.C. § 1988(c) and 2000e-5(k) and/or TEX. LAB. CODE § 21.259, Plaintiff seeks to recover any and all expert fees, which he incurs and/or may incur in bringing this suit.

6.3     Additionally, Plaintiff seeks to recover costs of court, along with pre-judgment and post-judgment interest at the maximum rate permitted by law.

## VII.
## CONDITIONS PRECEDENT

7.1     All conditions precedent to the relief being sought by Plaintiff in this Complaint have been performed, have occurred, and/or have been waived.

## VIII.
## <u>DEMAND FOR JURY TRIAL</u>

8.1 Pursuant to the Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests

trial by jury and will tender the requisite fee.

## <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon final hearing,

Plaintiff recover judgment against Defendant and be awarded:

(1) any and all amounts recoverable and/or recognizable as damages under law and/or in equity, resulting and/or occasioned by the wrongful acts and/or conduct of Defendant (as set forth above more specifically);

(2) injunctive relief to the extent permitted by law and/or equity;

(3) equitable relief to the extent permitted by law and/or equity;

(4) declaratory relief as requested herein;

(5) his litigation expenses and costs, including but not limited to his reasonable and necessary attorneys' fees and costs and any applicable expert fees;

(6) pre-judgment and post-judgment interest at the maximum rate permitted by law;

(7) costs of court; and

(8) such other and further relief, both general and special, at law and in equity, to which Plaintiff may show himself to be justly entitled.

Respectfully submitted,

 /s/ Frank Hill
Frank Hill                           09632000
Michael Y. Kim                       24039960

HILL GILSTRAP, P.C.
1400 West Abram Street
Arlington, Texas  76013
(817) 261-2222
(817) 861-4685 Facsimile
fhill@hillgilstrap.com
mkim@hillgilstrap.com

ATTORNEYS FOR PLAINTIFF


## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2010, I electronically filed Plaintiff's First Amended

Complaint with the Clerk for the U.S. District Court, Northern District of Texas, using the

CM/ECF system, and on February 10, 2010, I forwarded a file-marked copy of such filing to the

following persons via certified mail, return receipt requested:

Dr. Wright Lowenstein Lassiter Jr., Chancellor
Dallas County Community College District
1601 South Lamar Street
Dallas, Texas  75215

Robert J. Young, General Counsel
Dallas County Community College District
1601 South Lamar Street, Suite 208
Dallas, Texas  75215.


 /s/ Michael Y. Kim
Michael Y. Kim